UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| ANTHONY CIARLA, ) | Case No. 4:08CV1351 |
| ) | |
| Plaintiff, ) | JUDGE PETER C. ECONOMUS |
| ) | |
| v. ) | Magistrate Judge George J. Limbert |
| ) | |
| CORRECTIONS CORPORATION OF ) | **Report and Recommendation** |
| AMERICA (CCA), et al., ) | **of Magistrate Judge** |
| ) | |
| Defendants. ) | |

The instant matter is before the Court upon Defendants Correction Corporation of America ("CCA"), Northeast Ohio Correctional Center ("NEOCC"), Joseph Gunja, Albert Toss, Danny Hall, and Dana Orenic's (collectively, "Defendants") motion for summary judgment. ECF Dkt. #23. The case was referred to the undersigned for a report and recommendation. ECF Dkt. #7. For the following reasons, the undersigned recommends that the Court GRANT Defendants' motion and dismiss the instant case in its entirety with prejudice:

I.  **Synopsis of the Facts**

On July 17, 2006, Plaintiff Anthony Ciarla ("Plaintiff") was being detained at the Miami Federal Detention Center ("FDC") when he fell on a concrete floor and injured his elbow. ECF Dkt. #1 at 3, #23 at 2. He was taken to the Larkin Hospital where his elbow was x-rayed. *Id*. The x-rays revealed a fractured radial head of the right elbow. *Id*. Medical staff recommended that Plaintiff see an orthopedist and have a CT of his elbow. ECF Dkt. #1 at 3, #23 at 2.

He was returned to FDC where FDC medical staff placed his arm in a cast on September 13, 2006. ECF Dkt. #1 at 4, #23 at 2, Ex. A-6. On October 4, 2006, FDC medical staff took an x-ray and found evidence of a fracture involving the head of the radius with a mild depression at the fracture site. ECF Dkt. #23, Ex. A-7. On October 11, 2006, FDC medical staff interpreted the October 4, 2006 x-ray as suggesting improvement. ECF Dkt. #23, Ex. A-8.

On March 9, 2007, Plaintiff complained that he had still not had a CT scan as the doctors at Larkin Hospital had recommended. ECF Dkt. #23 at Ex. A-11. On March 18, 2007, Plaintiff sent an inmate request seeking an appointment for his elbow. ECF Dkt. #23 at Ex. A-12. Dr. Lopez examined Plaintiff on March 28, 2007. *Id*.

On July 17, 2007, Plaintiff was transferred to NEOCC. ECF Dkt. #1 at 6; ECF Dkt. #23 at 2. During his medical intake examination, NEOCC medical staff noted that Plaintiff was awaiting a CT scan on his right elbow, but he was moved from FDC before it was performed. ECF Dkt. #23, Ex. A-13. Plaintiff requested medical appointments more than 15 times and he was seen by NEOCC medical staff on numerous occasions between July 18, 2007 and June 12, 2008. ECF Dkt # 23, Ex. A-14-33; ECF Dkt. #27 at 6. Of note, on July 23, 2007, Physician Assistant Danny Hall saw Plaintiff and opined that no CT scan or orthopedic consultation was needed. ECF Dkt. #23, Ex. A-15. Upon examination, he observed chronic joint pain, a limited range of motion, and discoloration. *Id*. He prescribed heat for 20 minutes every four hours for three days and Tylenol and Advil. *Id*. Later, NEOCC medical staff noted that x-rays of Plaintiff's elbow had been taken on four occasions. ECF Dkt. #23, Ex.A-19.

On May 20, 2009, NEOCC physician Dr. Toss examined Plaintiff. ECF Dkt. #23, Ex. A at ¶42. Dr. Toss observed no tenderness and an adequate range of motion in the right elbow. *Id*. at ¶45. Dr. Toss specifically noted that Plaintiff's ability to extend his right elbow was "slightly diminished." *Id*. at ¶46. Dr. Toss recommended physical therapy and concluded that surgery was not necessary and neither was a CT scan. *Id*. at ¶¶47-49. Dr. Toss noted that surgery may or may not alleviate Plaintiff's pain and that the condition should first be treated with non-steroidal anti-inflammatory medication, heat, and a regular program of stretching exercises, as surgery is a "last ditch" effort and does not fully alleviate the injury. *Id*. at ¶¶50-52.

## II.    STANDARD OF REVIEW

The function of summary judgment is to dispose of claims without trial when one party is unable to demonstrate the existence of a factual dispute which, if present, would require resolution by a jury or other trier of fact. *Schultz v. Newsweek, Inc.*, 668 F.2d 911, 918 (6th Cir. 1982).

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(C).

The party moving for summary judgment has the burden of showing there exists no genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). This burden can be discharged by showing that the nonmoving party has failed to establish an essential element of his case, for which he bears the ultimate burden of proof at trial. *See e.g., Catrett v. Celotex Corp.*, 477 U.S. 317, 323 (1986); *Morales v. Am. Honda Motor Co., Inc.,* 71 F.3d 531, 535 (6th Cir. 1995). The evidence and all the inferences that can reasonably be drawn therefrom must be read in the light most favorable to the nonmoving party. *Id.*

If the moving party meets his burden, the nonmoving party must take affirmative steps to avoid the entry of a summary judgment. *See* Fed. R. Civ. P. 56(e). To refute such a showing, the nonmoving party must present some significant, probative evidence indicating the necessity of a trial for resolving a material, factual dispute. *Celotex*, 477 U.S. at 322. A mere scintilla of evidence is not enough. *Anderson v. Liberty Lobby*, 477 U.S. 242, 252 (1986).

In ruling on a motion for summary judgment, the court is not obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim. *Interroyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989). Therefore, in determining whether a genuine issue of material fact exists on a particular issue, a court is entitled to rely only upon those portions of the record specifically called to its attention by the parties. *Staats v. United States*, No. C-3-99-174, 2001 WL 1135056, *3 (S.D. Ohio Mar. 12, 2001), unreported; *Interroyal Corp. v. Sponseller*, 889 F .2d 108, 111 (6th Cir. 1989), *cert. denied*, 494 U.S. 1091 (1990).

### III. LAW AND ANALYSIS

Defendants contend that they are entitled to summary judgment on multiple bases. ECF Dkt. #23. Defendants contend that: Plaintiff cannot make a prima facie showing of deliberate indifference to medical needs; Defendant Gunja was not involved in Plaintiff's medical care; Defendants Gunja and Orenic are not liable under respondeat superior; Plaintiff's complaint hinges

on a desire to have elective surgery for a condition that was not life urgent or life threatening; Plaintiff cannot make a showing that Defendants acted with a reckless disregard of a substantial risk for a potential serious harm; Plaintiff cannot prove to a reasonable degree of medical certainty that any deliberate indifference caused him injury; the claims against CCA and NEOCC lack merit because *Bivens* forecloses constitutional claims against corporate entities; and Plaintiff's Ohio law medical malpractice claim lacks merit because he has failed to present the necessary affidavit of merit. *Id*.

### A.     *Bivens* Claim

The Eighth Amendment to the United States Constitution prohibits "deliberate indifference to serious medical needs of prisoners." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). Deliberate indifference requires that the official both know of and disregard an excessive risk to the inmate's health or safety. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). A prison official violates an inmate's Eighth Amendment rights only when two requirements are met. First, "the deprivation alleged must be, objectively, sufficiently serious." *Id*. (internal citations omitted). In other words, the "prison official's act or omission must result in the denial of 'the minimal civilized measure of life's necessities.' " *Id*. quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). In order for a prisoner to succeed on a claim based on a prison official's failure to prevent harm, "the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834, citing *Helling v. McKinney*, 509 U.S. 25, 35 (1993). Second, it must be shown that a prison official acted with "deliberate indifference" in failing to protect the inmate. *Farmer*, 511 U.S. at 834. A prison official acts with deliberate indifference when he knows that an inmate faces a substantial risk of serious harm and the official disregards that risk by failing to take reasonable measures to abate it. *Id.* at 837. The prison official must be aware of facts from which an inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. *Id.* It is sufficient for an inmate to show that the prison official "acted or failed to act despite his knowledge of a substantial risk of serious harm" to the inmate. *Id.* at 842.

Here, Plaintiff contends that he was denied proper medical care as the Eighth Amendment requires. *See* ECF Dkt. #1. Defendants contend that the surgery Plaintiff seeks to have performed is elective. ECF Dkt. #23 at 4. The basis for Defendants' contention appears to be Dr. Toss' affidavit because he opined that Plaintiff's condition could be treated with non-steroidal anti-inflammatory medication, heat, and a regular program of stretching exercises, as surgery is a "last ditch" effort and does not fully alleviate the injury. ECF Dkt. #23, Ex. A at ¶¶50-52.

Plaintiff has presented no evidence to show that a CT or orthopedic surgery is necessary to avoid a substantial risk of serious harm. Plaintiff has not presented evidence quantifying any serious harm to date or evidence to demonstrate a basis for expecting a risk of serious harm in the future that would result if he would not receive the treatment he seeks. Rather, as discussed above, the medical records show that his condition has been monitored and that medical professionals have recommended treatment with pain medication, heat, and stretching exercises. These are the medical professionals who have monitored Plaintiff's condition following his initial visit to Larkin Hospital. Although they have a different opinion than the doctors at Larkin, Plaintiff maintains that the recommendations of the doctors at the Larkin constitute the standard for medical care that he should receive. The undersigned notes that over a year elapsed since the physicians at Larkin observed Plaintiff's condition and they observed him on a limited basis. The NEOCC medical staff provided ongoing care and offered a more contemporary opinion based on his condition at this time.

Even if Plaintiff's contention were correct and he should receive a CT scan and orthopedic surgery, he has failed to demonstrate deliberate indifference. Medical professionals have monitored his condition and provided ample treatment. As discussed above, they took four x-rays of Plaintiff's elbow, noted improvement in the fracture, and opined that a CT scan and surgery were therefore not necessary. Further, Dr. Toss opined that surgery was a "last ditch" option because it was not always effective and Plaintiff's condition could first be treated with less invasive techniques. "Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims that sound in state tort law." *Graham ex rel. Estate of Graham v. County of Washtenaw*, 358 F.3d 377, 385 (6th Cir. 2004) quoting *Westlake v. Lucas*, 537 F.2d 857, 860, n. 5 (6th Cir.1976).

-5-

Since no *Bivens* liability should attach to the NEOCC medical staff, it follows that any *Bivens* claims based upon supervisor liability must also fail. Accordingly, the undersigned recommends that the Court DISMISS Plaintiff's *Bivens* claims in their entirety with prejudice.

### B. FTCA Claim

Next, the Court must consider Plaintiff's complaint to the extent that it states a claim under Ohio medical malpractice law. The undersigned recommends that the Court grant Defendants' motion in this regard because the Court must apply Ohio law under the FTCA and Ohio law requires Plaintiff to present the opinion of a medical expert to support his claim, as discussed below.

The FTCA allows a private individual to sue the United States for damages for torts that its employees commit while acting within the scope of their employment. *Montez v. United States*, 359 F.3d 392, 395 (6th Cir. 2004). This Court can hold the United States liable "in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674.

In order to determine liability under the FTCA, this Court must refer to the law of the state where the alleged act or omission occurred. 28 U.S.C. 1346(b); *Rayonier Inc. v. United States*, 352 U.S. 315, 318-319 (1957); *Flechsig v. United States*, 991 F.2d 300, 303-304 (6th Cir. 1993).

The Supreme Court of Ohio has held that " Proof of [medical] malpractice, in effect, requires two evidentiary steps: evidence as to the recognized standard of the medical community in the particular kind of case, and a showing that the physician in question negligently departed from this standard in his treatment of plaintiff." *Davis v. Virginian Ry. Co.*, 361 U.S. 354, 357 (Ohio 1960). More recently, the Supreme Court of Ohio acknowledged the additional requirement of expert testimony to establish proximate causation: "Where the alleged negligence involves the professional skill and judgment of a nurse, expert testimony must be presented to establish the prevailing standard of care, a breach of that standard, and that the nurse's negligence, if any, was the proximate cause of the patient's injury." *Ramage v. Central Ohio Emergency Serv., Inc.*, 592 N.E.2d 828, 834 (Ohio, 1992). "Failure to establish the recognized standards of the medical community has been fatal to the presentation of a prima facie case of malpractice by the plaintiffs." *Bruni v. Tatsumi*, 346 N.E.2d 673, 677 (Ohio 1976). "Proof of the recognized standards must

-6-

necessarily be provided through expert testimony.  This expert must be qualified to express an opinion concerning the specific standard of care that prevails in the medical community in which the alleged malpractice took place, according to the body of law that has developed in this area of evidence." *Id*. at 677-78.

A "common knowledge exception" to the expert testimony requirement exists where "matters of common knowledge and experience, subjects which are within the ordinary, common and general knowledge and experience of mankind, need not be established by expert opinion testimony." *Ramage*, 592 N.E.2d at 833.

The Western District of Pennsylvania has recently considered a case similar to the one at bar under Pennsylvania law. *Jones v. U.S.*, Civil Action No. 05-287, 2008 WL 2367188 at *5(W.D.Pa., June 6, 2008), slip op.  The *Jones* court dismissed a federal inmate's medical malpractice suit for failing to provide the testimony of a medical expert because "Courts sitting in medical malpractice cases require detailed expert testimony because a jury of laypersons generally lacks the knowledge to determine the factual issues of medical causation; the degree of skill, knowledge, and experience required of the physician; and the breach of the medical standard of care." *Id*. at *4-*5.  The *Jones* case is persuasive because the rule of law requiring expert testimony in medical malpractice cases in Ohio is similar to the rule in Pennsylvania.  Both Ohio and Pennsylvania law require expert testimony in medical malpractice cases to establish breach of a standard of care owed by a medical professional and to establish a causal nexus between that breach and the resulting injury.  Compare *Ramage*, 592 N.E.2d 834 with *Toogood v. Rogal*, 573 A.2d 1140, 1149 (Pa. 2003).

Here, Plaintiff has failed to present the testimony of an expert to establish the recognized standard in the medical community that Defendants have breached.  Under the clearly articulated rule of law in *Bruni*, dismissal is mandated by the lack of evidence establishing the existence of a recognized standard of care, a breach of that standard, or a causal nexus between the breach and the alleged injury.  Therefore, the undersigned recommends that the Court DISMISS Plaintiff's FTCA claim in its entirety with prejudice.

## V. CONCLUSION

For the foregoing reasons, the undersigned RECOMMENDS that the Court GRANT Defendants' motion for summary judgment (ECF Dkt. #23) and DISMISS the instant case in its entirety with prejudice.

Date: September 15, 2009   *s/ George J. Limbert*
GEORGE J. LIMBERT
UNITED STATES MAGISTRATE JUDGE

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within ten (10) days of service of this notice. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).